**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

UNITED STATES OF AMERICA            CRIMINAL NO. 03-50097

VERSUS                              JUDGE S. MAURICE HICKS, JR.

KARESHA LANAL MINNIE BOYD           MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court is an appeal (Record Document 22) filed by the defendant, Karesha Lanal Minnie Boyd ("Boyd"). Boyd is appealing from a final judgment of conviction of larceny issued on July 14, 2006 by Magistrate Judge Mark Hornsby in the above-captioned matter. Boyd appeals her conviction solely on the basis of lack of evidence. After reviewing the record and the Magistrate Judge's findings, the Court finds no error and affirms the judgment of conviction.

**I.    BACKGROUND.**

On June 27, 2003, Store Detective Robert G. Smith ("Detective Smith") at the Base Exchange ("BX") on the Barksdale Air Force Base was on duty and was located in the BX security office in the back of the store. See Transcript of Bench Trial at 6-7. Detective Smith explained that the BX maintains an in-store security system consisting of 27 cameras, most of which rotate 360 degrees. See id. at 5. He further explained that the cameras provide "full coverage of the BX" and that the system "recorded on two monitors with VHS tape."[1] Id.

At approximately 5:00 p.m., he observed, via closed circuit television, a group of five

---

[1] A videotape of the events in this case was made by store detectives; however, the videotape was lost between the date of the incident in 2003 and the bench trial in 2006. See Transcript of Bench Trial at 27.

people entering the BX. See id. The group approached the ID desk, where three people were signed in.[2] See id. at 7. Two of the three individuals signed in were Boyd and Erika Samuels ("Samuels"). See id. at 8, 9.

After being signed in, Boyd and Samuels proceeded to a display of Dooney & Burke and Coach purses. See id. at 9. Samuels picked up a Dooney & Burke wallet. See id. At this time, Boyd was within a foot of Samuels. See id. Boyd and Samuels, with the Dooney & Burke wallet in her hand, then went into the fitting room. See id. at 9-10. Boyd and Samuels exited the fitting room within a few minutes and returned the Dooney & Burke wallet back to the display. See id. at 11. Detective Smith then went to the display and examined the wallet. See id. He found that the price tag and the manufacturer's information had been removed from the wallet. See id.

Samuels and Boyd were next observed going to customer service, which is at the opposite end of the BX from the purse display. See id. at 12. They took a number and waited for their number to be called. See id. at 15. While waiting, Samuels and Boyd went to an aisle nearby. See id. at15. Hallmark greeting cards are located on one side of this aisle and cosmetics, mainly Fashion Fair cosmetics, are located on the other side of the aisle. See id. at 15-16. Via closed circuit television, Detective Smith observed Samuels selected a gift bag. See id. at 16. Then, Samuels turned around, picked up several cosmetic items, and then placed the cosmetic items in the gift bag. See id. Detective Smith stated that Boyd was watching Samuels at this time and was even pointing out some

---

[2]According to Detective Smith, active duty military, reserve or guard, or a card-carrying dependent have BX privileges. See Transcript of Bench Trial at 6. An individual without BX privileges may be signed in by an authorized person at the ID desk. See id.

of the cosmetic items. See id. Detective Smith went on to state, during the bench trial, that he believed Samuels and Boyd were consulting. See id. Conversely, Boyd testified at trial that while she was present with Samuels on the cosmetics aisle, she was not helping Samuels pick out cosmetics. See id. at 64.

Samuels and Boyd then returned to the customer service area and tried to obtain a refund for a Dooney & Burke wallet which was similar, but not identical, to the one Samuels had handled in the store earlier. See id. at 13. The attempt to obtain a refund was not successful because Samuels did not have a military issued identification card. See id. Samuels later tried to have Kimberly Mahone ("Mahone"), one of the two individuals that had signed Boyd and Samuels into the BX, obtain the refund. See id. at 13-14. Again, the refund attempt was not successful because Mahone did not have a receipt for the wallet. See id. at 14. Further, the store detectives had called the customer service manager to alert him not to refund the wallet. See id.

Samuels and Boyd left the customer service area and met up with an Air Force tech sergeant, the other individual who had signed them into the BX. See id. at 18. The Air Force tech sergeant, a male, had clothing in a shopping cart. See id. Samuels, who still had the gift bag containing cosmetics, took the clothing and went into a fitting room. See id. Sometime thereafter, Boyd also entered the same fitting room. See id. Later, Boyd exited the fitting room and waited for Samuels to exit the fitting room. See id. at 19. Samuels exited the fitting room carrying the clothing and the gift bag. See id.

The group, consisting of Samuels, Boyd, and the Air Force tech sergeant, then proceeded to central checkout. See id. The Air Force tech sergeant took the basket of clothing into a checkout line and Samuels placed the gift bag on the floor. See id.

Samuels and Boyd then exited the BX through the main exit near the ID desk. See id.

Unaware that Samuels and Boyd had left the BX, Detective Smith asked one of the BX managers, May Padgett ("Padgett"), to retrieve the gift bag. See id. After realizing that Samuels and Boyd were leaving/had left the BX, Detective Smith left the security office and went into the main store. See id. Detective Smith encountered Padgett, who had the gift bag in her possession. See id. at 20. Padgett gave the gift bag to Detective Smith and he learned that the cosmetic boxes in the gift bag were empty. See id. All five individuals who had entered the BX together at approximately 5:00 p.m. were then detained on suspicion of shoplifting. A search of Samuels revealed the cosmetic items from the empty boxes in her purse and in her hair. See id. at 32. No merchandise was recovered from Boyd or any of the other individuals. See id. The total value of the merchandise recovered from Samuels was $58.50.

On September 18, 2003, the Government charged Boyd in a single count Bill of Information with theft, in violation of 18 U.S.C. § 641,[3] of three eyeliner pencils, two lip liner pencils, and one oil control pressed powder from the BX. See Record Document 1. Samuels was also charged with the same offense, but she later pled guilty to a one count Bill of Information charging her with larceny of the makeup merchandise. See Transcript of Bench Trial at 22.

The Magistrate Judge held a bench trial on February 16, 2006. See Record Document 16. At the conclusion of the bench trial, the Magistrate Judge found Boyd guilty of the single count of larceny of government property. See id. On July 14, 3006, the

---

[3] 18 U.S.C. § 641 pertains to the embezzlement or theft of public money, property, or records.

Magistrate Judge sentenced Boyd to two years supervised probation, imposed a fine of $500.00, and assessed a $25.00 fee to the crime victims fund. See Record Document 20. The judgment of the Magistrate Judge was entered on August 8, 2006. See Record Document 21. Boyd appealed her judgment of conviction on July 28, 2006. See Record Document 22.

## II.     STANDARD OF REVIEW.

This Court will review Boyd's conviction for sufficiency of evidence. On appeal from a magistrate judge's judgment of conviction, "the defendant is not entitled to a trial *de novo* by a district judge." F.R.Cr.P. 58(g)(2)(D). Rather, the scope of the defendant's appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Id. Under this standard of review, a district court will affirm a magistrate judge's findings if they are supported by substantial evidence. See U.S. v. Lee, 217 F.3d 284, 288 (5th Cir. 2000). In order to reverse the defendant's conviction, "this Court must conclude that no rational trier of fact could find substantial evidence establishing the defendant's guilt beyond a reasonable doubt." Id. The Court shall also consider all of the evidence in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the Magistrate Judge. See id.

## III.    ANALYSIS.

Boyd argues on appeal that there was insufficient evidence to prove that she participated in the larceny. Specifically, she argues that "although the Government proved that a larceny of $58.50 of merchandise occurred at the . . . [BX] on June 25, 2003, it did not prove beyond a reasonable doubt that [she] participated in it." Record Document 24

at 6. Boyd relies heavily upon the fact that the merchandise which was the subject of the larceny was found in the possession of and recovered from Samuels. See id. Boyd further argues that the Government failed to establish that she formulated the intent to steal and/or assisted Samuels in some way. See id. at 8. Boyd maintains that the Magistrate Judge convicted her of larceny despite the fact that there was no evidence that she actively participated in the theft of the cosmetics for which she was charged, arguing that "it is entirely possible that . . . Boyd did not know that . . . Samuels intended to steal the cosmetics which formed the subject matter of the bill of information." Id. at 11.

The Court finds the evidence sufficient to sustain Boyd's larceny conviction. The Magistrate Judge had the opportunity to judge the demeanor and credibility of not only Boyd, but also Detective Smith and clearly elected to credit the testimony of Detective Smith over Boyd. It is clear that the Magistrate Judge relied on Detective Smith's testimony to conclude that Samuels and Boyd worked actively together to steal the items of makeup charged in the Bill of Information. The Magistrate Judge concluded that Boyd was an active and willing participant with Samuels in the selection and concealment of the items of makeup stolen from the BX. Specifically, the Magistrate Judge stated:

> The facts show that Ms. Boyd was Ms. Samuels' almost constant companion during the time in which Ms. Boyd and Ms. Samuels were in the BX. They were together with the wallet when they went into the dressing room for the very first time. And somehow all of the tags and paperwork had been removed from that wall, and then there was an unsuccessful attempt to try to get a refund on that wallet. . . .
>
> They were present together, as I appreciate the evidence, virtually shoulder to shoulder during the process of picking out the cosmetics and putting the items in the gift bag. They went into the dressing room together.
>
> [Defense counsel] points out that Mr. Smith was wrong about some of the details, about Mr. Smith not noticing that there were clothes that Ms.

> Boyd had taken in the dressing room for the point of trying on . . . those clothes. But I do not believe that that created any kind of reasonable doubt.
>
> It is true that none of the items were actually recovered from My. Boyd, but that of course does not negate her involvement, that the evidence of the offense was not found on her.
>
> I do not find that Ms. Boyd's testimony was credible with regard to her involvement. . . .
>
> The circumstantial evidence shows beyond a reasonable doubt that Ms. Boyd was in fact involved in the theft with Ms. Samuels. The doubts that [defense counsel] has come forward with today simply are not reasonable under the circumstances, so I find that Ms. Boyd is in fact guilty of larceny as charged in the bill of information.

Transcript of Bench Trial at 84-85.

This Court will not disturb the Magistrate Judge's judgment, as his findings are supported by substantial evidence. See Lee, 217 F.3d at 288. Based on the evidence heard by the Magistrate Judge at trial, it is clear that any rational trier of fact could find substantial evidence establishing Boyd's guilt beyond a reasonable doubt, namely based on the evidence that Boyd and Samuels were almost constant companions; Boyd consulted with Samuels on the cosmetics aisle; and Boyd joined Samuels, who was in possession of the gift bag containing the cosmetics at issue, in the fitting room. See id. Further, the Court is cognizant of its duty to consider all of the evidence in the light most favorable to the verdict, deferring to the reasonable inferences of fact drawn by the Magistrate Judge. See id.

Accordingly, the Court finds that a rational trier of fact could have concluded that Boyd and Samuels worked together to steal the items of makeup charged in the Bill of Information. For these reasons, Boyd's conviction is **AFFIRMED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this the 4th day of October, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE